# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DARREN PARKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. CIV-09-424-F |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Darren Parker ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing his applications seeking disability insurance benefits and supplemental security income payments in August and December of 2005, respectively [Tr. 134 - 136 and 393 - 399]. He alleged that he suffers from bipolar disorder and the residuals of a severe leg break which became disabling as of August, 2005

[Tr. 134, 150, and 393]. Plaintiff's claims were denied and, at his request, an Administrative Law Judge ("ALJ") conducted an October, 2007 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 121 and 38 - 114]. In his February, 2008 decision, the ALJ found that while Plaintiff was unable to perform his past relevant work, he retained the capacity to perform other generally available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 19 - 32]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 8 - 11], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claim of Error**

Plaintiff maintains that legal error was committed at the fifth and final step of the sequential process because "the vocational expert did not provide Dictionary of Occupational Titles (DOT) numbers for any of the jobs cited so the Court is left to speculate [as to] exactly what jobs the vocational expert relied." [Doc. No. 19, p. 10]. In addition, Plaintiff asserts that legal error was committed because "the vocational expert did not appear to cite specific occupations but rather cited . . . occupational groups." *Id.* at 11.

**Analysis**

Although Plaintiff devotes a significant portion of his opening brief to his extensive medical history, it has no relevance to the issues on appeal because Plaintiff makes no claim that the ALJ erred with regard to any of the first four steps of the five-step inquiry, including his determination of Plaintiff's residual functional capacity ("RFC)[1]:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and/or carry (including upward pulling) 20pounds and frequently lift and/or carry (including upward pulling) 10 pounds. He can stand and/or walk (with normal breaks) for 1 hour total of an 8-hour workday and sit (with normal breaks) for 7 hours total of an 8-hour workday. Pushing and/or pulling (including operation of hand and/or foot controls) is unlimited up to the poundages specified above. His residual functional capacity is diminished by nonexertional limitations, in that he has postural limitations of never climbing ladders/ropes/scaffolds and occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling. He must avoid concentrated exposure to extreme cold and to hazards such as no uneven terrain, unprotected heights or hazardous machinery. In addition he can sustain at least simple, repetitive tasks which can be learned within 30 days and do not require significant prolonged interaction with the public.

[Tr. 23].

Neither does Plaintiff allege that there were flaws in the hypothetical questions put to the vocational expert ("VE") by the ALJ in order to obtain her opinion of the work Plaintiff was still able to perform in the national economy despite his limitations [Tr. 107 - 108, 110 and 111]. Rather, it is Plaintiff's argument that the VE, in giving her opinion

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

evidence of the available work that Plaintiff could perform, was required by Tenth Circuit case law to provide specific *Dictionary of Occupational Titles* (DOT)[2] job titles and corresponding numbers. Because the VE testified that Plaintiff could perform the general occupation of inspector, with 175 sedentary, unskilled jobs available in Oklahoma and 14,000 in the nation, the general occupation of production worker, with 570 sedentary, unskilled jobs available in Oklahoma and 57,000 in the nation [Tr. 108], and the general occupation of electronics assembler, with 485 light, unskilled jobs available in Oklahoma and 46,000 in the national economy [Tr. 109], Plaintiff contends that the vocational evidence, as a matter of law, cannot support the ALJ's step five finding that Plaintiff remains "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Tr. 31].

Plaintiff's argument is that there is not a DOT job title for an inspector or a production worker. Accordingly, it is not possible on judicial review to compare the requirements for a specific job against Plaintiff's limitations. In addition, although there is a job titled "electronics assembler" in the DOT,[3] it is a semi-skilled position and Plaintiff's RFC limits him to unskilled work. The Commissioner counters by providing, in the words of Plaintiff in his reply brief, "the Court with an abundance of specific jobs that purportedly fit within

---

[2]The *Dictionary of Occupational Titles*, published by the Department of Labor, is one of several publications from which the Social Security Administration "will take administrative notice of reliable job information." 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

[3]*See Dictionary of Occupational Titles* 726.684-018 (4th rev. ed. 1991).

5

the broad categories of 'inspector,' 'production worker,' and 'electronics assembler.'" [Doc. No. 23, p. 3]. Plaintiff does not suggest that his RFC would preclude the performance of any of the jobs identified by the Commissioner – as well as by Plaintiff in his own briefing – but argues that because "the vocational expert never testified these jobs fit within the ALJ's hypothetical and the ALJ never cited any of these jobs in his denial decision," the Commissioner is violating "the longstanding rule against *post hoc* justification of administrative action." *Id.*

As legal support for his theory, Plaintiff relies, first, on the unpublished decision by the Tenth Circuit in *Chuculate v. Barnhart,* 170 Fed. Appx. 583 (10th Cir. Mar. 15, 2006). There, remand was required because the VE's written response to a post-hearing hypothetical submitted by the ALJ omitted an impairment – a limited ability to use leg controls. *Id.* at 587. The court found that because a hypothetical question must precisely state a claimant's impairment, "it follows that the VE's written response to a written question must also repeat the impairments with precision." *Id.* The court went on to note that if the VE had provided DOT numbers for the jobs she stated that the plaintiff could perform, the court could have checked to see if leg controls were used. *Id.* at 588. Thus, contrary to Plaintiff's argument, the *Chuculate* court did not mandate the use of specific DOT numbers by a VE but, instead, required that the VE's written response to a written hypothetical mirror that hypothetical. As to specific DOT numbers, the court simply stated that if the numbers had been available, the court could have checked to see if leg controls were used in the jobs and to consider,

presumably, whether the failure to include the limitation in the written response was harmless.

Next, Plaintiff maintains that the opinion in *Haddock v Apfel,* 196 F.3d 1084 (10th Cir. 1999), establishes that the ALJ cannot meet his burden at step five if he fails "to cite examples of specific occupations and provide a statement of the incidence of those jobs in the national economy." [Doc. No. 19, p. 11]. Plaintiff also cites to the decision in *Carpenter v. Astrue,* 537 F.3d 1264 (10th Cir. 2008) as additional support. The Commissioner responds by stating that the difference between an occupational group and a specific occupation is one of semantics and that he "does not read the Tenth Circuit's decision in *Haddock* as requiring the identification of a specific industry." [Doc. No. 22, p. 6]. While the Commissioner acknowledges that "[i]n the *Carpenter* case, the Court noted that the VE had identified categories of jobs rather than specific jobs in the *DOT* and that neither the ALJ nor the VE considered all of the requirements for any particular job," *id.* at 6 -7, he argues that "it is difficult to compare the facts in this case with the facts in *Carpenter.*" *Id.* at 7. And, the Commissioner maintains that he "does not read this case as requiring the VE and the ALJ to provide *DOT* job numbers in all cases, and the Commissioner has found no such requirement in Social Security regulations or rulings."*Id.*

Based on the Tenth Circuit's rationale in *Haddock* and the construction of that decision in *Carpenter,* the undersigned agrees with Plaintiff that the ALJ erred at step five of the sequential process by relying on categories of jobs that Plaintiff could perform rather than specifying particular jobs in the DOT. Any number of particular jobs can fit within a

7

job category, and a reviewing court can only speculate as to the specific jobs the VE had in mind.

In *Haddock,* the Tenth Circuit considered a case where the VE testified that the claimant could perform four jobs and that thousands of these jobs – with the four jobs grouped together as one – were regionally and nationally available; the source of the expert's information was not discussed. *Haddock,* 196 F.3d at 1087. Relying on this testimony, the ALJ found that the claimant was not disabled. *Id.* On appeal, the claimant argued that the DOT description of only one of these jobs matched his RFC restrictions and that because there was no evidence as to the incidence of this one conforming job, the evidence was not sufficiently developed to support the ALJ's step five finding that he was not disabled. *Id.* at 1087-88.

While the *Haddock* court readily determined that "[i]t is axiomatic that all of the ALJ's required findings must be supported by substantial evidence," *id.* at 1088, it acknowledged that "[w]hat the agency's regulations and rulings require an ALJ to do, or even allow an ALJ to do, to produce substantial vocational evidence at step five is not clear." *Id.* at 1089. Nonetheless, because the ALJ is entitled to rely conclusively on information from the DOT at step four, the court reasoned that "[i]t would be anomalous to read the agency's regulations to allow an ALJ to disregard the Dictionary at step five – where the ALJ bears the burden[.]" *Id.* at 1090.

Explaining that step five responsibility, the court stated that "[d]etermining the functional demands and job duties of *specific jobs* and matching those requirements to a

8

claimant's limitations is the very task the ALJ must undertake at step five." *Id.* (quotation marks omitted and emphasis added). And, in reiterating that "regardless of what step is under evaluation, an ALJ has a duty to fully develop the record even when the claimant is represented by an attorney, as in this case," *id.* at 1091 (citing *Thompson v. Sullivan,* 987 F.2d 1482, 1492 (10th Cir. 1993), the court found that at step five, just as at steps three and four, the ALJ is required to "establish the predicate facts for his conclusions." *Id.*

Thus, the court held that "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* In the present case, the VE advised the ALJ that she had deviated from the DOT in her testimony regarding Plaintiff's ability to perform the light "work of an electronics worker." [Tr. 109]. Nonetheless, the VE did not explain the discrepancy between her testimony that Plaintiff – who was limited to unskilled work – could perform the work of an electronics assembler, *id.,* and the DOT's description of that work as being semi-skilled. The Commissioner dismisses this failure, stating that he "has found at least fourteen unskilled jobs – both sedentary and light – under the heading of 'Assembly and Repair of Electronic Components.'" [Doc. No. 22, p. 10].[4] The Commissioner then lists these specific jobs by DOT title and number and concludes that "clearly numerous unskilled sedentary and light jobs in this category exist." *Id.*

---

[4]Actually, there are over seventy jobs of varying skill and exertional levels listed under this heading.

The *sole* position provided by the VE that matches a DOT job title – electronics assembler – exceeds Plaintiff's skill level. Under those circumstances, under *Haddock* and Social Security Ruling 00-4p, 2000 WL 1898704, the ALJ erred by failing to resolve the conflict with the vocational expert. The Commissioner's response is to sidestep the issue and provide, instead, his list of fourteen so-called electronics assembler jobs that present no conflict with the DOT, implicitly suggesting that the vocational expert, who testified that "an example of a light, unskilled job would be electronics assembler," [Tr. 109], did not intend to include the position of "electronics assembler" as specifically designated by the DOT. The Commissioner is inviting speculation and supplying his own step five evidence. It is equally possible that the VE intended to reference the specific DOT-titled job of "electronics assembler" but failed to reconcile the skill-level conflict.

It is telling that while the Commissioner argues that the VE and the ALJ were not required to provide specific DOT job titles to meet the burden at step five, this is exactly what the Commissioner does in attempting to uphold the nondisability finding. He provides specific DOT electronics assembler, inspector, and production worker titles and numbers in order to give this court reviewable evidence. There is, however, no evidence that these are the specific jobs that the VE – or the ALJ – had in mind either as suitable for Plaintiff or when reporting the incidence of available jobs. The Commissioner is speculating and asking the court to do the same.

The undersigned's conclusion requiring identification of specific DOT jobs rather than categories of jobs is consistent[5] with the Tenth Circuit's explication of *Haddock* in *Carpenter v. Astrue,* 537 F.3d 1264 (10th Cir. 2008), a matter remanded due to error committed prior to step five. In noting the potential impact of such error on the ALJ's hypothetical to the VE at step five, the court went on to state that:

> [w]e note for consideration on remand that [claimant] correctly asserts the VE identified categories of jobs rather then specific jobs in the Dictionary of Occupational Title (DOT), and neither the ALJ nor the VE considered all of the requirements of any particular job. The ALJ is obligated to explain conflicts between a VE's testimony and a job description in the DOT, however, and therefore must elicit enough vocational evidence for this court to determine whether there is a conflict. *Haddock v. Apfel,* 196 F.3d 1084, 1089 (10th Cir. 1999).

*Carpenter,* 537 F.3d at 1270-1.[6]

Because the ALJ in the present case relied on the VE's identification of categories of jobs instead of specific DOT jobs at step five of the sequential procedure, remand is required.

---

[5]The undersigned's recommendation is also consistent with authority from the Western District of Oklahoma. *See Griffith v. Astrue,* 2008 WL 2557606, 132 Soc.Sec.Rep.Serv. 391 (W.D. Okla. Jun. 20, 2008) (where the three jobs provided by the VE in responding to a hypothetical question generated multiple, specific DOT job listings with varying skill and exertional requirements, the Commissioner cannot meet his step five burden without testimony by the VE identifying which of these multiple jobs Plaintiff is able to perform).

[6]The undersigned notes that in another Western District of Oklahoma case, the court rejected claimant's reliance on *Carpenter* as *dicta* where claimant argued that the ALJ was required to elicit the DOT numbers for specific jobs or occupations. *Peisley v. Astrue,* 2010 WL 455182, at *4 (W.D. Okla. Jan. 22, 2010).

The undersigned has found no authority requiring specific DOT numbers and, consequently, does not find that remand is necessary because the numbers were not provided here. Nonetheless, the undersigned suggests that providing the DOT number along with the specific DOT job title could serve to eliminate any possible question as to the particular job or jobs intended by the VE and, in turn, the ALJ.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded.

The parties are advised of their right to object to this Report and Recommendation by April 12, 2010, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 22nd day of March, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE